IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TEXAS
(BEAUMONT DIVISION)

| | |
|---|---|
| WILLIAM S. PICKERING, and <br> CHARLES R. MOORE, <br>     *Plaintiffs,* <br><br> vs. <br><br> UNION PACIFIC RAILROAD <br> COMPANY, <br>     *Defendant.* | § <br> § <br> § <br> § <br> § <br> § <br> § <br> § <br> § <br> §     CIVIL ACTION No. 1:11-cv-00718-RC <br><br>     JURY DEMAND |

**DEFENDANT UNION PACIFIC RAILROAD COMPANY'S
OBJECTIONS AND ANSWERS TO PLAINTIFF CHARLES MOORE'S
FIRST SET OF INTERROGATORIES**

    COMES NOW Defendant Union Pacific Railroad Company (hereinafter "Defendant" or "Union Pacific") and hereby serves its objections and answers to Plaintiff Charles R. Moore's First Set of Interrogatories as follows:

**PRELIMINARY STATEMENT**

    Union Pacific is a large organization employing thousands of individuals at numerous locations in several States. It has several predecessors-in-interest through various corporate acquisitions and mergers. Union Pacific objects to all interrogatories on the ground that they are vague, ambiguous, overly broad and unduly burdensome in that they request information on behalf of or as to all of Union Pacific's predecessors, facilities or employees and would be impossible to respond to as to all entities as written. Union Pacific also objects to all interrogatories on the ground that they are overly broad, unduly burdensome, oppressive, and designed to harass Union Pacific and to subject Union Pacific to undue expense, in that such interrogatories seek information not relevant or material to any pending litigation in this Court.

    Union Pacific has made a reasonable effort to respond to the interrogatories as Union Pacific understands and interprets the same. In the event a different interpretation is asserted by the propounding party, Union Pacific reserves the right to supplement the answers and objections contained herein.

    Union Pacific has not completed its discovery and investigation in this matter and has not completed its trial preparation. Discovery is continuing. It is anticipated that further discovery, analysis and research will reveal additional facts, witnesses and documents and these answers are provided without prejudice to Union Pacific's right to use such facts, information, witnesses or documents discovered subsequent to this response.

**GENERAL OBJECTIONS**

    A.    Union Pacific objects to the Interrogatories to the extent that they request any information protected by the attorney-client privilege, the joint defense privilege and/or the work

Exhibit 3.

product doctrine. Any information subject to any privileges inadvertently produced by Union Pacific in response to the Interrogatories shall not constitute or be deemed to constitute a waiver of any such privilege.

      B.     Union Pacific objects to the Interrogatories to the extent that they seek information which is neither relevant nor reasonably calculated to lead to the discovery of admissible evidence.

      C.     Union Pacific objects to the Interrogatories to the extent that they exceed the scope of permissible discovery under the Federal Rules of Civil Procedure.

      D.     Union Pacific objects to the Interrogatories to the extent that they purport to require it to produce information that is available to Plaintiff where the burden of deriving or ascertaining said information is substantially the same for Plaintiff as for Union Pacific.

      E.     Union Pacific objects to the Interrogatories to the extent that they purport to require it to produce information pertaining to any time period other than the relevant time period.

      F.     Union Pacific objects to the Interrogatories to the extent they purport to require it to provide and/or produce information pertaining to any work location(s) or job site(s) other than those at which Plaintiff worked.

      G.     Union Pacific objects to the Interrogatories to the extent that they are vague, ambiguous, overly broad or unduly burdensome.

      H.     Union Pacific objects to the Interrogatories to the extent that they purport to require it to provide and/or produce information pertaining to any entity other than the predecessor for whom Plaintiff worked.

      I.     Union Pacific objects to the Interrogatories on the ground that they seek information in the possession, custody or control of third parties or concerning third parties which invades such third parties' right of privacy.

      J.     Union Pacific objects to the Interrogatories to the extent that they seek trade secret or otherwise proprietary and confidential information.

      K.     Union Pacific objects to the Interrogatories to the extent that they purport to require it to produce information pertaining to any entities other than the predecessors for whom Plaintiff worked.

      L.     The foregoing general objections are specifically and expressly incorporated into each and every response herein and the reassertion or specification of any of these general objections or the assertion of other objections in no way implies a failure to assert each and every general objection.

      M.     Union Pacific reserves the right to supplement or amend its responses as appropriate.

**INTERROGATORY NO. 1:**
State the following information regarding your corporate structure:

(a) Your correct legal name;
(b) Your general business structure (e.g. corporation, etc.).
(c) The date you were incorporate or organized;
(d) Your state of incorporation or organization,
(e) The address for your principal office in the United States;
(f) The primary type of business in which you are engaged (e.g. railroad, etc.).

**ANSWER:** Objection. This interrogatory is vague and ambiguous. Union Pacific also objects that this interrogatory is overly broad, unduly burdensome and seeks information which is neither relevant nor reasonably calculated to lead to the discovery of admissible evidence including, but not limited to, because it is not limited to the relevant time period. Subject to and without waiver of the foregoing objections, Union Pacific responds as follows. Defendant is Union Pacific Railroad Company, a Delaware corporation, with its main office at 1400 Douglas Street, Omaha, Nebraska. The merger between Union Pacific and Southern Pacific Transportation Company ("Southern Pacific") took effect on September 11, 1996. Southern Pacific ceased to exist on February 1, 1998. Union Pacific's primary type of business is a common carrier by rail.

**INTERROGATORY NO. 2:**
For the period from 1930 through the present, state your relationship (if any) with the following entities, including any <u>ownership and/or operating interests</u> you may have held in them. For each such ownership or operating interest, state the percentage or amount of the interest, give the date when the interest was first acquired, the date such interest was terminated, and the general nature of such interest:

(a) Missouri Pacific Railroad Company;
(b) Missouri-Kansas-Texas Railroad Company;
(c) Chicago & Northwestern Transportation Company;
(d) Southern Pacific Transportation Company;
(e) St. Louis Southwestern Railway Company (a/k/a "Cotton Belt");
(f) Alton & Southern Railway.

**ANSWER:** Objection. This interrogatory is overly broad, unduly burdensome and seeks information which is neither relevant nor reasonably calculated to lead to the discovery of admissible evidence because it is not limited to the predecessor for whom Plaintiff worked. As such, it constitutes an impermissible "fishing expedition." Union Pacific also objects to this interrogatory as it purports to require Union Pacific to provide information that is equally available to Plaintiff where the burden of deriving or ascertaining such information is substantially the same or less for Plaintiff as for Union Pacific. Subject to and without waiver of the foregoing objections, Union Pacific states Missouri Pacific Railroad became part of Union Pacific with the acquisition of Missouri Pacific Corporation. The Interstate Commission (now Surface Transportation Board) authorized the acquisition of Missouri Pacific Corporation, including its wholly-owned subsidiary, Missouri Pacific Company, by Union Pacific Corporation on December 22, 1982. Missouri Pacific Railroad and Union Pacific Railroad operated as sister companies under common management until Missouri Pacific was merged with and into Union

Pacific on January 1, 1997. Union Pacific acquired the MKT in 1988. In 1988, Rio Grande Industries acquired Southern Pacific resulting in the merger of the Denver & Rio Grande Western and Southern Pacific under the Southern Pacific name. The merger between Union Pacific and Southern Pacific took effect on September 11, 1996. Southern Pacific ceased to exist on February 1, 1998.

**INTERROGATORY NO. 3:**

Identify all facilities that CHARLES R. MOORE was assigned to during the period of his employment with you. With regard to each such assignment, state:

    (a)    the name of the facility;
    (b)    the address and/or physical location of the facility;
    (c)    the dates that CHARLES R. MOORE was assigned to the facility; and
    (d)    CHARLES R. MOORE's job craft and/or title for each such assignment.

**ANSWER:** Objection. This interrogatory is overly broad and unduly burdensome and it purports to require Union Pacific to provide information that is equally available to Plaintiff where the burden of deriving or ascertaining such information is substantially the same for Plaintiff as for Union Pacific. Subject to and without waiver of the foregoing objections, Union Pacific states that discovery is continuing and reserves its right to supplement this answer.

**INTERROGATORY NO. 4:**

Identify all direct supervisors of CHARLES R. MOORE during the period he was employed by you by stating: (i) their name, (ii) job title; (iii) time period during which they supervised CHARLES R. MOORE; and (iv) if they are no longer employed by you, their last known address and telephone number.

**ANSWER:** Objection. This interrogatory is overly broad and unduly burdensome and it purports to require Union Pacific to provide information that is equally available to Plaintiff where the burden of deriving or ascertaining such information is substantially the same for Plaintiff as for Union Pacific. Union Pacific also objects that this interrogatory seeks information concerning third parties which invades such third parties' right to privacy. Subject to and without waiver of the foregoing objections, Union Pacific states that discovery is continuing and reserves its right to supplement this answer.

**INTERROGATORY NO. 5:**

Are you asserting any affirmative defenses in this case with regard to the claims of CHARLES R. MOORE? If so, state each affirmative defense, the general factual basis for each such defense, and identify all documents upon which the defense is based.

**ANSWER:** Objection. This interrogatory is vague and ambiguous. Union Pacific also objects that this interrogatory is premature. Union Pacific further objects that this interrogatory seeks information protected by the attorney-client privilege and/or the work product doctrine. Subject to and without waiver of the foregoing objections, Union Pacific states that discovery is continuing and reserves its right to supplement its answer.

**INTERROGATORY NO. 6:**
Do you contend that CHARLES R. MOORE'S injury was caused by exposure to asbestos somewhere other than while employed by you? If so, identify the date and location of each such other source of exposure.

**ANSWER:** Objection. This interrogatory is vague and ambiguous. Union Pacific also objects that this interrogatory is premature. Union Pacific further objects that this interrogatory seeks information protected by the attorney-client privilege and/or the work product doctrine. Subject to and without waiver of the foregoing objections, Union Pacific states that discovery is continuing and reserves its right to supplement its answer.

**INTERROGATORY NO. 7:**
Identify when the first claim was asserted against you under the Federal Employer's Liability Act by current or former employee for injury and/or illness allegedly resulting from occupational exposure to asbestos while employed by you, by stating: (i) the year claim was filed; (ii) the name, address and telephone number of the claimant; (iii) the job craft of the claimant; (iii) the alleged disease upon which the claim was based; and (iv) if suit was filed, the style of the case.

**ANSWER:** Objection. This interrogatory is vague, ambiguous, overly broad, unduly burdensome and seeks information which is neither relevant nor reasonably calculated to lead to the discovery of admissible evidence including, but not limited to, because it is not limited to Plaintiff's craft, Plaintiff's alleged exposures, the time period of his employment, the relevant work location(s) or job site(s), the predecessor for whom Plaintiff worked nor is it limited to Plaintiff's alleged injury. As such, it constitutes an impermissible "fishing expedition." Union Pacific further objects that this interrogatory seeks information protected by the attorney-client privilege and/or the work product doctrine in addition to information concerning third parties which invades such third parties' right to privacy. Union Pacific also objects to this interrogatory in that it purports to require Union Pacific to provide information that is equally available to Plaintiff where the burden of deriving or ascertaining such information is substantially the same for Plaintiff as for Union Pacific. Subject to and without waiver of the foregoing objections, the first record Southern Pacific had of any lawsuit alleging exposure to asbestos is *D. Frank v. Southern Pacific Transportation Company* filed in 1977 in Sacramento, California resulting in a defense verdict.

**INTERROGATORY NO. 8:**
Identify by trade name, each and every asbestos-containing product purchased, received, installed, removed, handled, or used by you during the period that CHARLES R. MOORE was employed by you. With respect to each such product state:

    (b)    [sic] the years said product was purchased, installed, or used by you;
    (c)    the type of asbestos fiber, or combination of fibers, used in each product;
    (d)    the percent of asbestos contained in each product;
    (e)    the manufacturer of the product;
    (f)    the intended use of each product (e.g., lagging, pipe wrap, gasket material, etc.); and
    (g)    in what general area each product listed above was distributed (i.e., nationally, southeast, gulf coast, etc.).

**ANSWER:** Objection. This interrogatory is vague and ambiguous. Union Pacific also objects that this interrogatory is overly broad, unduly burdensome and seeks information which is neither relevant nor reasonably calculated to lead to the discovery of admissible evidence including, but not limited to, because it is not limited to the relevant work location(s) or job site(s), Plaintiff's craft, Plaintiff's alleged exposures or the predecessor for whom Plaintiff worked. As such, it constitutes an impermissible "fishing expedition." Union Pacific further objects that this interrogatory seeks information protected by the attorney-client privilege and/or the work product doctrine in addition to information concerning third parties which invades such third parties' right to privacy. Subject to and without waiver of the foregoing objections, based on information obtained in the course of other litigation, Union Pacific compiled the following information concerning manufacturers, who may have made asbestos containing products purchased by Southern Pacific or used in the railroad industry. This list is based on allegations and sworn testimony made by asbestos plaintiffs in the course of litigation. This list encompasses some, but perhaps not all, of the products which Southern Pacific believes may have contained asbestos. Union Pacific has no independent knowledge of whether products from the following manufacturers were purchased or used by Southern Pacific during the time period of Plaintiff's employment. Union Pacific has no independent knowledge of whether Plaintiff was exposed to any products from the following manufacturers during any employment with Southern Pacific. Union Pacific has no independent knowledge of the exact composition of these alleged asbestos-containing products.

1. Anchor Packing; to include but not limited to: asbestos packing, No. 862 and 863; plastic-model asbestos jacket no. 804; plastic wire insulated asbestos jacket 809; high temperature wire insulated asbestos packing 807; Teflon/blue asbestos sheet no. 1189; twisted asbestos valve packing no. 314; braided asbestos valve packing no. 319; asbestos metallic square packing no. 805M; asbestos folded hand hole gaskets no. 600; W.I. asbestos tape no. 600; W.I. asbestos retorque packing; braided white asbestos with Teflon and light oil no. 1162-S; square plaited asbestos with Teflon and light oil no. 1109; course braided black asbestos with Teflon anti light oil no. 1161; square white asbestos and Teflon no. 1108; cross braided white asbestos with Teflon no. 1162; square plaited blue asbestos and Teflon no. 1109; cross-braided white asbestos with moly and Teflon no. 1164; red W.I. asbestos sheet packing no. 406; asbestos listing tape no. 1580; white twisted asbestos rope no. 1502; blue asbestos rope no. 1550; braided asbestos tubing (no wire) no. 1506; square plaid asbestos packing with no graphite no. 909; square plaited asbestos with graphite no. 317; cross-braided asbestos with graphite no. 1300; cross-braided asbestos with graphite no. 317W; and white asbestos semi-metal and Teflon no. 1107.

2. Johns-Manville packing no. 392; BGG packing BGG-193, 666-222,165, T-I, CT-2; asbestos jacket VG3, plastic wire insulation asbestos jacket no. 325, Teflon/white asbestos sheet 60, 7, gaskets 116 W.I., asbestos gasket tape no. 120, W.I. asbestos retorque packing 128, red and black W.I. asbestos sheet packing 101, asbestos cloth A-1225, asbestos lifting tape 1061, white twisted asbestos rope 4184-4916, braided asbestos rope 566-'702, blue rope 4194, twisted asbestos wick 4195; asbestos core 285; cross-braided asbestos with graphite CGI-255, pipe insulation, tagging (8596 magnesium), cobra brake shoes of various sizes to include both locomotive and car brake shoes.

3. Unarco Industries, Inc.: Unarco Insutape insulation: pipe covering, super Insutape pipe covering, Unarco asbestos heating retention bags, metallic asbestos cloth, unibestos pipe insulation, unibestos insulation block, unibestos insulation felt, asbestos textile, wovenstone,

insta-braided asbestos, asbestos cloth, asbestos rope, unibestos sheet, high-pressure packing, fibrous glass insulation and acoustical products, custom tailored high temperature insulation, Unarco metal mesh insulation blankets, Unarco fibrous glass insulation blankets, Unarco combination asbestos glass cloth, asbestos cloth, asbestos seals, Unarco calcium silicate insulating blocks, Unarco calcium silicate pipe insulation, Unarco mineral wool, Unarco insulating cement, Unarco asbestos heat retention bags, Unarcoboard, Unarco U200, and various types of gaskets.

4. 48 Insulation: super 48 cement; quick set cement nod N-1200 block.

5. John Crane Hide: asbestos containing packing and gaskets material various sizes and shapes to include but not limited to: twisted asbestos valve stem packing no. 814, braided asbestos valve stem packing 815; asbestos gasket tape 878; red and white W.I. asbestos sheet packing 222, white twisted asbestos rope no. 881, and twisted asbestos cord no. 880.

6. Garlock: various gaskets for steam diesel locomotives as well as sheet gasket material and various sizes of asbestos packing.

7. Westinghouse: air compressor gaskets for steam injection air pumps, asbestos containing brake shoes (cobra shoes) for diesel locomotives and freight cars.

The vast majority of these products were used in the steam era and use was discontinued in the early 1950's, although some asbestos products, namely listing tape and some gasket material were used on diesel locomotives.

**INTERROGATORY NO. 9:**
Did you ever conduct any tests or studies to determine potential health hazards to your employees resulting from the presence of Asbestos-Containing Materials (ACM) at your facilities or on your equipment? If so, with respect to each such test or study, state:

(a) the name, address, telephone number, and job classification of each individual and/or entity who conducted such test or study;
(b) the nature and results of each such test or study; and
(c) the steps you took to disseminate the results of each such test or study to your employees.

**ANSWER:** Objection. This interrogatory is vague, ambiguous, overly broad, unduly burdensome and seeks information which is neither relevant nor reasonably calculated to lead to the discovery of admissible evidence including, but not limited to, because it is not limited to Plaintiff's craft, Plaintiff's alleged exposures, the time period of his employment, the relevant work location(s) or job site(s) or the predecessor for whom Plaintiff worked. As such, it constitutes an impermissible "fishing expedition." Union Pacific further objects to this interrogatory to the extent that it seeks information protected by the attorney-client privilege and/or the work product doctrine. Union Pacific also objects that this interrogatory is argumentative and assumes facts. Subject to and without waiver of the foregoing objections, Union Pacific refers Plaintiff to its answers and objections to Interrogatory No. 10.

**INTERROGATORY NO. 10:**
During the period of time that he was employed by you, identify all tests or studies performed to determine the levels of asbestos that CHARLES R. MOORE was exposed to. With respect to each such test or study state:
- (a) the name, address, telephone number, and job classification of each individual who conducted each such test or study;
- (b) the nature and results of each such test or study; and
- (c) the steps you took to disseminate the results of each such test or study to CHARLES R. MOORE.

**ANSWER:** This interrogatory is overly broad, unduly burdensome and seeks information which is neither relevant nor reasonably calculated to lead to the discovery of admissible evidence including, but not limited to, because it is not limited to Plaintiff's craft, Plaintiff's alleged exposures, the time period of his employment, the relevant work location(s) or job site(s) or the predecessor for whom Plaintiff worked. As such, it constitutes an impermissible "fishing expedition." Union Pacific further objects to this interrogatory to the extent that it seeks information protected by the attorney-client privilege and/or the work product doctrine. Subject to and without waiver of the foregoing objections, Union Pacific states that it has no record of any such investigation by Southern Pacific nor has it located records or persons with knowledge responsive to this interrogatory for the time period and location of Plaintiff's employment with Southern Pacific. Union Pacific is aware of industrial hygiene surveys performed in recent years in addition to air sampling performed in conjunction with asbestos abatement activities. Union Pacific will produce any documents, if such documents exist, related to the location of Plaintiff's employment with Southern Pacific at a mutually agreeable time and location. Discovery is continuing and Union Pacific reserves its right to supplement its answer.

**INTERROGATORY NO. 11:**
In what year do you contend that the use and handling of asbestos-containing insulation materials (i.e., boiler lagging, pipe wrapping, sheet asbestos, asbestos mud, asbestos gasket material, asbestos brake shoes, etc.) was discontinued by you?

**ANSWER:** Objection. This interrogatory is vague, ambiguous, overly broad, unduly burdensome and seeks information which is neither relevant nor reasonably calculated to lead to the discovery of admissible evidence including, but not limited to, because it is not limited to Plaintiff's craft, Plaintiff's alleged exposures, the time period of his employment, the relevant work location(s) or job site(s) or the predecessor for whom Plaintiff worked. As such, it constitutes an impermissible "fishing expedition." Union Pacific also objects to this interrogatory to the extent that it seeks information protected by the attorney-client privilege and/or the work product doctrine. Subject to and without waiver of the foregoing objections, Union Pacific states that the vast majority of any asbestos containing products used by Southern Pacific would have been in the steam era, with their purchase discontinued in the early 1950s when railroads ceased using steam locomotives. Union Pacific also refers Plaintiff to its objections and answer to Interrogatory No. 8. Discovery is continuing and Union Pacific reserves its right to supplement this answer.

**INTERROGATORY NO. 12:**
State the date you contend all Asbestos-Containing Materials ("ACM") were removed and/or no longer present in your facilities and on your equipment?

**ANSWER:** Objection. This interrogatory is vague, ambiguous, overly broad, unduly burdensome and seeks information which is neither relevant nor reasonably calculated to lead to the discovery of admissible evidence including, but not limited to, because it is not limited to Plaintiff's craft, Plaintiff's alleged exposures, the time period of his employment, the relevant work location(s) or job site(s) or the predecessor for whom Plaintiff worked. As such, it constitutes an impermissible "fishing expedition." Union Pacific also objects to this interrogatory to the extent that it seeks information protected by the attorney-client privilege and/or the work product doctrine. Subject to and without waiver of the foregoing objections, Union Pacific states that the vast majority of any asbestos containing products used by Southern Pacific would have been in the steam era, with their purchase discontinued in the early 1950s when railroads ceased using steam locomotives. In addition, steam generator use on locomotives in passenger service was eliminated in the 1970s, "when the head end power system was developed for the heating of passenger trains with electricity." *See* Federal Railroad Administration, *Locomotive Crashworthiness and Cab Working Conditions Report to Congress*, at 10-11 (Sept. 1996). GE, one of the two primary manufacturers of current locomotives, has not permitted the use of asbestos in any facet of their locomotive production since October 1979 and informed their outside suppliers in mid-1987 that "all sub-assemblies provided for the production of locomotives must be free of asbestos." *Id.* at 10-11 – 10-12. GE also stated that it has no record of asbestos "ever being used in the cab environment of its locomotives." *Id.* EMD, the other primary manufacturer of current locomotives, issued a service bulletin on April 6, 1984 "prohibiting the use of asbestos for any purpose in locomotive construction." *Id.* at 10-12. This prohibition also applied to outside contractors supplying sub-assemblies. *Id.* Union Pacific also refers Plaintiff to its objections and answer to Interrogatory No. 15. Discovery is continuing and Union Pacific reserves its right to supplement this answer.

**INTERROGATORY NO. 13:**

Identify all training provided by you to CHARLES R. MOORE regarding asbestos by stating: (i) the date of such training, (ii) the course or video title, (iii) the location of the training, (iv) the length of the training, and (v) the identity all other persons who were present at the training.

**ANSWER:** Objection. This interrogatory is overly broad and unduly burdensome and it purports to require Union Pacific to provide information that is equally available to Plaintiff where the burden of deriving or ascertaining such information is substantially the same for Plaintiff as for Union Pacific. Union Pacific also objects that this interrogatory seeks information concerning third parties which invades such third parties' right to privacy. Subject to and without waiver of the foregoing objections, Union Pacific states that discovery is continuing and reserves its right to supplement this response.

**INTERROGATORY NO. 14:**

Identify all respirators, dust masks, air hoods, or other items of personal protective respiratory equipment issued by you to CHARLES R. MOORE during the period of his employment by stating the date of issue, the manufacturer and model number of the equipment, the purpose for which it was issued, and the date(s) (if any) when it was inspected, withdrawn from service or replaced, and identify any documents in your possession or control which establish those facts.

**ANSWER:** Objection. This interrogatory is overly broad and unduly burdensome. Union Pacific further objects to this interrogatory to the extent that it purports to require Union Pacific to provide information that is equally available to Plaintiff where the burden of deriving or ascertaining such information is substantially the same for Plaintiff as for Union Pacific. Subject to and without waiver of the foregoing objections, Southern Pacific employees were provided with safety equipment to protect them from the hazards of airborne dust. Southern Pacific's employees were subject to work rules that, since approximately the 1930s, required employees to use respirators in certain conditions. Since that time respirators have been available for use. In addition, since the 1930s, Southern Pacific held safety meetings on a weekly or monthly basis at which safety information was communicated to and discussed with employees. Southern Pacific furnished mechanical, store department and other employee safety rules which were incorporated into the Safety Rules Booklet that was updated periodically. Rule 4026 provided that the "use of compressed air or gas to blow dust or dirt from body or clothes is forbidden." Rule 4045 provided that respirators "are provided for use when spray painting or working where fumes or excessive dust may be encountered." Union Pacific has located the following: Southern Pacific's Safety Rules for the Guidance of Employees in Maintenance of Equipment Department effective February 1, 1944; Southern Pacific Transportation Company and St. Louis Southwestern Railway Company's Safety Rules Governing Employees of the Maintenance of Way and Structures Department effective May 1, 1977; Southern Pacific Transportation Company and St. Louis Southwestern Railway Company's Catalog of Approved Personal Protective Equipment effective October 1, 1961 and revised December 21, 1977; Southern Pacific Company's Rules and Regulations of the Transportation Department effective January 1, 1969; Southern Pacific Transportation Company's Safety Instructions Governing Employees in Train, Engine and Yard Service effective March 1, 1975; Southern Pacific Transportation Company's Rules and Regulations of the Transportation Department effective October 31, 1976; Southern Pacific Lines' Safety and General Rules for All Employees effective April 15, 1991. *See* documents Bates stamped SP 00006-00357 previously produced to Plaintiff's counsel. Southern Pacific Lines Safety & Health Programs were further codified in the 1990s. *See* documents Bates stamped SP 00808-00960 previously produced to Plaintiff's counsel. Furthermore, a 1981 Southern Pacific record instructed employees on precautions to be taken in handling, removing and disposing of possible asbestos containing products, including wearing respirators from the Catalog of Approved Personal Protective Equipment, wearing gloves and disposable clothing, wetting down the suspect material and also labeling the bagged suspect material to be disposed. *See* document Bates stamped SP 00004 previously produced to Plaintiff's counsel.

As to Union Pacific, a rule promulgated by Union Pacific Railroad Company as Form 7180 of the Rule and Instructions of the Mechanical Department, directed that persons working in dusty environments should use respirators. The Rules and Instructions of the Mechanical Department were first issued on July 15, 1943, revised October 1, 1954, and are presently in force and effect. *See* documents bates-stamped UP 00115-00155 previously produced to Plaintiff's counsel. Prior rules may have existed, but none have been located. Maintenance of Way Rules from April 1985 likewise require the use of respirators and such rules are presently in force and effect. *See* documents bates-stamped UP 00024-00114 previously produced to Plaintiff's counsel. The General Code of Operating Rules from April of 1986 also applies to Union Pacific employees. Whenever it has been deemed advisable, respirators are issued and directed to be used. Union Pacific formalized its Asbestos Safety Program into a written program in 1985. *See* documents bates-stamped UP 00156-00242 previously produced to Plaintiff's counsel.

Prior rules are believed to have existed, but none have yet been located. Discovery is continuing and Union Pacific reserves its right to supplement this answer. *See also* plaintiffs' discovery and depositions in other asbestos lawsuits for discovery responses or testimony regarding safety meetings, safety equipment, safety rulebooks, safety measures supervisors and co-workers and personnel records, if any.

**INTERROGATORY NO. 15:**
Identify all computer databases currently maintained by you or anyone on your behalf that contain Electronically Stored Information ("ESI") regarding occupational illness and/or injury claims made against you by current and/or former employees allegedly arising from occupational exposure to asbestos. For each such database, state: (i) the name of the database; (ii) the format in which the information is stored (native (e.g. Microsoft Access) or static (e.g. PDF, TIFF, etc.)); and (iii) the person with most knowledge concerning the database.

**ANSWER:** Objection. This interrogatory is vague, ambiguous and assumes facts. Union Pacific also objects that this interrogatory is overly broad, unduly burdensome and seeks information which is neither relevant nor reasonably calculated to lead to the discovery of admissible evidence including, but not limited to, because it is not limited to Plaintiff's craft, Plaintiff's alleged exposures, the time period of his employment, the relevant work location(s) or job site(s), the predecessor for whom Plaintiff worked nor is it limited to Plaintiff's alleged injury. As such, it constitutes an impermissible "fishing expedition." Union Pacific further objects that this interrogatory seeks information protected by the attorney-client privilege and/or the work product doctrine. In addition, this interrogatory seeks information concerning third parties which invades such third parties' right to privacy and may seek to violate HIPAA.

**INTERROGATORY NO. 16:**
Identify all computer databases currently maintained by you or anyone on your behalf that contain Electronically Stored Information ("ESI") regarding the inspection and/or abatement of Asbestos Containing Materials ("ACM") in your facilities or equipment. For each such database, state: (i) the name of the database; (ii) the format in which the information is stored (native (e.g. Microsoft Access) or static (e.g. PDF, TIFF, etc.)); and (iii) the person with most knowledge concerning the database.

**ANSWER:** Objection. This interrogatory is vague, ambiguous and assumes facts. Union Pacific also objects that this interrogatory is overly broad, unduly burdensome and seeks information which is neither relevant nor reasonably calculated to lead to the discovery of admissible evidence including, but not limited to, because it is not limited to Plaintiff's craft, the time period of his employment, the relevant work location(s) or job site(s), the predecessor for whom Plaintiff worked nor is it limited to Plaintiff's alleged injury. As such, it constitutes an impermissible "fishing expedition." Union Pacific further objects that this interrogatory seeks information protected by the attorney-client privilege and/or the work product doctrine. In addition, this interrogatory seeks information concerning third parties which invades such third parties' right to privacy.

**INTERROGATORY NO. 17:**
Identify all warning provided by you to CHARLES R. MOORE, during the period of his employment with you, regarding the presence of Asbestos Containing Materials ("ACM").
**ANSWER:** Objection. This interrogatory is overly broad, unduly burdensome and seeks

information which is neither relevant nor reasonably calculated to lead to the discovery of admissible evidence including, but not limited to, because it is not limited to the substances Plaintiff contends he was exposed to during his railroad employment. As such, it constitutes an impermissible "fishing expedition." Union Pacific further objects to this interrogatory to the extent that it purports to require it to provide information that is equally available to Plaintiff where the burden of deriving or ascertaining such information is substantially the same for Plaintiff as for Union Pacific. Subject to and without waiver of the foregoing objections, for a number of years, employees have been instructed to notify their supervisor if they come into contact with any material they believe contains asbestos. Once material believed to contain asbestos is identified, it is examined by a certified abatement contractor and if necessary, removed in an area distant from the general shop area such that employees are not exposed to airborne asbestos fibers. Union Pacific also refers Plaintiff to its answers and objections to Interrogatory No. 14. Discovery is continuing and Union Pacific reserves its right to supplement its answer.

**INTERROGATORY NO. 18:**
Identify all inspections and/or surveys for asbestos-containing materials ("ACM") performed on the facilities and/or equipment on which CHARLES R. MOORE worked during the period of his employment with you. For each such inspection and/or survey, state: (i) the date and location of the inspection or survey; (ii) who performed the inspection or survey; (iii) the results of each such inspection or survey; and (iv) the file number or report number for each such inspection and/or survey.

**ANSWER:** Objection. This interrogatory is overly broad, unduly burdensome and seeks information which is neither relevant nor reasonably calculated to lead to the discovery of admissible evidence including, but not limited to, because it is not limited to the substances Plaintiff contends he was exposed to during his railroad employment. As such, it constitutes an impermissible "fishing expedition." Union Pacific further objects to this interrogatory to the extent that it purports to require it to provide information that is equally available to Plaintiff where the burden of deriving or ascertaining such information is substantially the same for Plaintiff as for Union Pacific. Subject to and without waiver of the foregoing objections, Union Pacific states that discovery is continuing and reserves its right to supplement its answer.

**INTERROGATORY NO. 19:**
For the time period from 1930 to the present, identify each of your employees who have served on the following sections/committees of the Association of American Railroads, ("AAR"), by stating their name, position, and dates served:

    (a)    Medical & Surgical Section;
    (b)    Legal Affairs Committee;
    (c)    Safety Committee;
    (d)    Environmental Committee;
    (e)    Ad Hoc Working Group on Asbestos Related Litigation; and
    (f)    Steering Committee.

**ANSWER:** Objection. This interrogatory is overly broad, unduly burdensome and seeks information which is neither relevant nor reasonably calculated to lead to the discovery of admissible evidence including, but not limited to, because it is not limited to the time period of

Plaintiff's employment or the predecessor for whom Plaintiff worked. Union Pacific further objects that this interrogatory seeks information concerning third parties which invades such third parties' right to privacy. Union Pacific also objects that this interrogatory seeks information which is equally available to Plaintiff where the burden of deriving or ascertaining said information is substantially the same for Plaintiff as for Union Pacific.

**INTERROGATORY NO. 20:**
State the name, address, and telephone number of "third-party expert with extensive experience in estimating resolution costs for asbestos-related claims" who assisted you in assessing the number and value of unasserted asbestos claims through the year 2034, as referenced on page 29 of your 2004 Annual Report (Form 10K).

**ANSWER:** Objection. This interrogatory is overly broad and unduly burdensome in that it seeks information which is neither relevant nor reasonably calculated to lead to the discovery of admissible evidence. Union Pacific also objects that this interrogatory seeks information protected by the attorney-client privilege and/or the work product doctrine. Union Pacific further objects that this interrogatory seeks confidential and proprietary business information.

**INTERROGATORY NO. 21:**
Identify ALL insurance agreements under which any party may be liable to satisfy part or all of a judgment which may be entered in this action or to indemnify or reimburse for payments made to satisfy the judgment.

**ANSWER:** Objection. This interrogatory seeks information protected by the attorney-client privilege and/or the work product doctrine. Subject to and without waiver of the foregoing objections, Subject to and without waiver of the foregoing objections, Union Pacific states that although insurance coverage may be available for certain asbestos-related claims brought by certain employees against it, there are absolutely no insurance agreements existing under which any party may satisfy all or part of any judgment which may be entered in favor of Plaintiff and against Union Pacific in this matter. Similarly, there are no insurance agreements existing to indemnify or reimburse Union Pacific for payments made by it to satisfy any judgment which may be entered in favor of Plaintiff and against Union Pacific in this matter.

**INTERROGATORY NO. 22:**
State the full name, job title, job description, address, and phone number of the person(s) answering and/or assisting in answering these interrogatories.

**ANSWER:** Employees of Union Pacific in conjunction with and under the direction of counsel for Union Pacific Railroad Company.

**INTERROGATORY NO. 23:**
Identify all documents relied upon by the individuals listed in answer to Interrogatory No. 22, above, in answering these interrogatories including, but not limited to: (i) prior pleadings in other cases; (ii) previous depositions or statements taken in prior cases, (iii) prior discovery responses in other cases, (iv) and other similar documents.

**ANSWER:** Objection. This interrogatory seeks information protected by the attorney-client privilege and/or the work product doctrine. Subject to and without waiver of the foregoing

objections, Union Pacific refers Plaintiff to the documents identified herein. Discovery is continuing and Union Pacific reserves its right to supplement this answer.

- 15 -

**VERIFICATION TO FOLLOW**

Respectfully submitted,

**FORMAN PERRY WATKINS KRUTZ & TARDY LLP**

By: _____
ROGER H. NEBEL
State Bar No. 90001973
Federal Bar No. 32458
4900 Woodway, Suite 940
Houston, Texas 77056
Telephone: (713) 402-1717
Facsimile: (713) 621-6746

Tracy J. Cowan
HAWKINS PARNELL THACKSTON & YOUNG, LLP
10 S. Broadway, Suite 1300
St. Louis, MO 63102
Telephone: (314) 678-8600
Facsimile: (314) 678-8686

**ATTORNEYS FOR DEFENDANT
UNION PACIFIC RAILROAD COMPANY**

**CERTIFICATE OF SERVICE**

I hereby certify that **Defendant Union Pacific Railroad Company's Objections and Answers to Plaintiff Charles R. Moore's First Set of Interrogatories** were served on counsel for Plaintiffs', J. Kirkland Sammons, Sammons & Berry, 4606 F.M. 1960 West, Suite 600, Houston, TX 77069 by certified U.S. mail, return receipt requested on March ___, 2012.

_____
ROGER H. NEBEL

- 16 -